UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DANIEL A. VIRTUE,<br><br>    Plaintiff,<br><br>    v.<br><br>INTERNATIONAL BROTHERHOOD OF TEAMSTERS RETIREMENT & FAMILY PROTECTION PLAN, *et al.*,<br><br>    Defendants. | Civil Action No. 12-516 (JEB) |

## MEMORANDUM OPINION

After Plaintiff Daniel Virtue began participating in the International Brotherhood of Teamsters Retirement and Family Protection Plan, IBT amended the Plan to retroactively make employees like Virtue ineligible. Virtue then brought this suit under subsections (a)(1)(B) and (a)(3) of 29 U.S.C. § 1132. He alleges that the Amendment violated the Employee Retirement Income Security Act. Defendants IBT and the Plan now move for partial judgment on the pleadings, seeking to dismiss the § 1132(a)(3) counts. They argue that a § 1132(a)(3) claim exists only when other relief is unavailable and that here § 1132(a)(1)(B) offers adequate relief for all of the alleged ERISA violations. Because this Court concludes that § 1132(a)(1)(B) provides inadequate relief for at least one alleged violation, it will deny the Motion.

**I.     Background**

According to the Complaint, which the Court must assume is true for purposes of resolving the instant Motion, IBT hired Virtue on or about October 1, 2000. See Compl., ¶ 2. At that time, any employee who worked 1000 hours in a twelve-month period (except an employee

hired for limited duration) was eligible to participate in the Plan. See id., ¶ 8. Under those eligibility rules, Virtue became a Plan participant in October 2001. See id., ¶ 14.

Eligibility rules changed, however, on November 13, 2001, when the IBT board adopted Amendment 2001-C. Retroactive to April 1, 1999, the Amendment made "stipend employees" like Virtue ineligible to participate in the Plan. See id., ¶¶ 9-10. In one fell swoop, the Amendment nullified Virtue's participation in the Plan and retroactively made his entire employment period ineligible for Plan participation.

Virtue first challenged his ineligibility in administrative proceedings, but the Plan administrator denied his appeal. See id., ¶¶ 10-14. Virtue then brought this suit. Defendants have now filed the instant Motion for Partial Judgment on the Pleadings under Federal Rule of Civil Procedure 12(c).

## II. Legal Standard

This Court evaluates a Rule 12(c) motion for judgment on the pleadings under the same standard as a Rule 12(b)(6) motion to dismiss. See Robinson-Reeder v. Am. Council on Educ., 532 F. Supp. 2d 6, 12 (D.D.C. 2008). The factual allegations presented in the Complaint must thus be presumed true and should be liberally construed in Plaintiff's favor. See Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163 (1993). The notice-pleading rules are "not meant to impose a great burden upon a plaintiff." Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, [if] accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation omitted). Plaintiff must put forth "factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." Id.  Though a plaintiff may survive a Rule 12(b)(6) motion even if "recovery is very remote and unlikely," Twombly, 550 U.S. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)), the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Id. at 555.

A motion for judgment on the pleadings under Rule 12(c) must rely solely on matters within the pleadings, see Fed. R. Civ. P. 12(d), which includes statements adopted by reference as well as copies of written instruments joined as exhibits. Fed. R. Civ. P. 10(c).  Where the Court must consider "matters outside the pleadings" to reach its conclusion, a motion for judgment on the pleadings "must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d); see also Yates v. District of Columbia, 324 F.3d 724, 725 (D.C. Cir. 2003).

**III.   Analysis**

In this suit, Virtue principally protests that: (1) 29 U.S.C. § 1054(g), ERISA's "anti-cutback" rule, barred the retroactive application of the Amendment; (2) § 1054(h) prohibited the Amendment because IBT gave insufficient notice; and (3) the Plan administrator miscalculated Virtue's hours.  See Compl., ¶¶ 8, 14, 17-18.  (The third issue is irrelevant to the instant Motion. See Opp. at 3 n.2.)  Virtue's Complaint contains four counts, all brought under two subsections of 29 U.S.C. § 1132, which provides a cause of action for alleged violations of ERISA.

Count IV arises under § 1132(a)(1)(B), which focuses on a "wrongful denial of benefits." Varity Corp. v. Howe, 516 U.S. 489, 512 (1996).  This subsection authorizes a civil action by a plan participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  As the Supreme Court has emphasized, courts must heed the specific language of § 1132(a)(1)(B), which "speaks of 'enforcing' the 'terms of the plan,' not of

changing them." CIGNA Corp. v. Amara, 131 S. Ct. 1866, 1876-77 (2011) (emphasis in original) (brackets omitted).

Counts I, II, and III, conversely, are brought under § 1132(a)(3). That subsection is a "'catchall' provision[]" that "act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that §[1132] does not elsewhere adequately remedy." Varity, 516 U.S. at 512. Section 1132(a)(3) authorizes a civil action by a plan participant, beneficiary, or fiduciary "to enjoin any act or practice which violates any provision of this subchapter [§§ 1001-1191c] or the terms of the plan" or "to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." Because § 1132(a)(3) acts as a safety net, the Supreme Court has directed that "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'" Varity, 516 U.S. at 515.

Defendants' Motion is narrow. They raise no challenge to Count IV, and they challenge Counts I, II, and III on a single ground: that § 1132(a)(1)(B) – i.e., Count IV – provides "adequate relief" for the violations Virtue alleges and therefore further equitable relief would not be "appropriate" under § 1132(a)(3). Virtue agrees that if § 1132(a)(1)(B) affords adequate relief, Counts I, II, and III should be dismissed. See Opp. at 4.

The only question for this Court, consequently, is whether § 1132(a)(1)(B) provides Virtue adequate relief. As the Supreme Court explained in CIGNA, that subsection may provide relief when a plan participant or beneficiary seeks to "enforce" the "terms of the plan," but will not provide relief when a participant or beneficiary seeks to change those terms. See 131 S. Ct. at 1876-77. Section 1132(a)(1)(B) therefore provides adequate relief here – and Counts I, II, and

4

III should be dismissed – only if Virtue seeks to "enforce" the Plan's terms, not change them, in challenging the Amendment for violating §§ 1054(g) and (h). The Court ultimately concludes that because remedying such alleged violations would go beyond "enforce[ment]," the Motion must fail.

The Court's conclusion relies primarily on the Supreme Court's decision in CIGNA. There, the district court found that changes to a retirement plan violated various ERISA provisions, including § 1054(h). See 131 S. Ct. at 1874-75. The district court then "ordered relief in two steps," relying entirely on § 1132(a)(1)(B). Id. at 1876. In "Step 1" it "ordered the terms of the plan reformed." Id. In "Step 2" it "ordered the plan administrator . . . to enforce the plan as reformed." Id. The Second Circuit affirmed. See id.

But the Supreme Court reversed, holding that § 1132(a)(1)(B) did not authorize the two-step relief that the district court had ordered:

> One can fairly describe step 2 as consistent with § [1132](a)(1)(B), for that provision grants a participant the right to bring a civil action to "recover benefits due . . . under the terms of his plan." And step 2 orders recovery of the benefits provided by the "terms of [the] plan" as reformed.
> But what about step 1? Where does § [1132](a)(1)(B) grant a court the power to change the terms of the plan as they previously existed? The statutory language speaks of "enforc[ing]" the "terms of the plan," not of changing them. The provision allows a court to look outside the plan's written language in deciding what those terms are, i.e., what the language means. But we have found nothing suggesting that the provision authorizes a court to alter those terms, at least not in present circumstances, where that change, akin to the reform of a contract, seems less like the simple enforcement of a contract as written and more like an equitable remedy.

Id. at 1876-77 (omission, second and fourth alterations, and emphasis in original) (citations omitted). Instead, the Court suggested, the remedies ordered by the district court likely fit under § 1132(a)(3) because they resembled traditional equitable remedies. See id. at 1878-80.

5

Here, too, the relief that Virtue seeks will require two steps.  Step 1: invalidate the Amendment.  Step 2: order the Plan administrator to enforce the newly revised Plan.  Just like in CIGNA, § 1132(a)(1)(B) authorizes step 2, but step 1 seems to require this Court to <u>change</u> the "terms of the plan," not to "<u>enforce</u>" them.  The Eighth Circuit came to the same conclusion in <u>Ross v. Rail Car America Group Disability Income Plan</u>, 285 F.3d 735 (8th Cir. 2002):

> Ross asserts in his opening brief to this court that this is a claim for benefits under 29 U.S.C. § 1132(a)(1) (section 502(a)(1) of ERISA), but it is not.  Although his ultimate goal is to continue receiving disability income benefits from Canada Life, section 502(a)(1)(B) authorizes a participant to bring an action to recover benefits, enforce rights, or clarify rights to future benefits <u>under the terms of the plan</u>.  Ross is not seeking to obtain benefits under the terms of the Plan.  Rather, he is seeking to reform the Plan by obtaining a declaration that the purported 1990 and 1991 amendments are void.  Section 502(a)(1)(B) does not authorize such a claim.
>                 . . . .
> The two counts which seek to invalidate the amendments can only be characterized as arising under 29 U.S.C. § 1132(a)(3), section 502(a)(3) of ERISA.  It is this provision which authorizes a participant to bring an action to enjoin any act which violates either a provision of ERISA Title I or the terms of the plan, or to obtain other appropriate equitable relief to enforce any provisions of Title I or the terms of the plan. . . .  Although he ultimately seeks a restoration of full benefits, the vehicle for that requested relief is invalidation of the amendments.

<u>Id.</u> at 740-41 (emphasis in original) (citations omitted).

As the <u>Ross</u> court acknowledged, challenging amendments under § 1132(a)(3) may create a practical enforcement problem.  "In order to obtain complete relief, a successful plaintiff may need to assert claims . . . under §§ 1132(a)(1)(B) <u>and</u> (a)(3)" because sometimes § 1132(a)(3) will not authorize <u>step 2</u>.  <u>Id.</u> at 741 n.7 (emphasis added).  But here, as elsewhere, "concerns about practical enforceability are insufficient to outweigh the clarity of the text."  <u>Flores-Figueroa v. United States</u>, 556 U.S. 646, 656 (2009).

6

Although Defendants have not raised this point, it bears mention that § 1132 may treat violations of § 1054(g) and § 1054(h) differently.  When an amendment that reduces benefits "egregious[ly]" violates § 1054(h), the plan "<u>shall be applied</u> as if such plan amendment entitled all applicable individuals to" the "benefits to which they would have been entitled <u>without regard to such amendment</u>."  29 U.S.C. § 1054(h)(6)(A) (emphasis added).  It is unclear how § 1054(h)(6) interacts with § 1132.  On one hand, maybe § 1054(h)(6) immediately voids every amendment that egregiously violates § 1054(h).  If a disputed amendment was void *ab initio*, perhaps a court can skip step 1, which § 1132(a)(1)(B) does not authorize, and proceed directly to step 2, which it does.  <u>See</u> <u>CIGNA</u>, 131 S. Ct. at 1876-77.  On the other hand, § 1132 distinguishes between the "terms of the plan" written in the plan documents and the statutory ERISA "provisions" like § 1054(h).  The actual "terms" written in the plan documents will contain every amendment – even an amendment that egregiously violates an ERISA provision like § 1054(h).  And while § 1132(a)(1)(B) allows enforcement of the "terms of the plan," it does not allow enforcement of ERISA provisions.  <u>Compare</u> 29 U.S.C. § 1132(a)(1)(B) (allowing civil action simply to enforce "the terms of the plan"), <u>with</u> 29 U.S.C. § 1132(a)(3) (allowing civil action for violation of "any provisions of this subchapter [§§ 1001-1191c] <u>or</u> the terms of the plan" (emphasis added)).  So skipping step 1 in an § 1132(a)(1)(B) action based on an egregious violation of § 1054(h) would seem to create tension with the statutory language that confines § 1132(a)(1)(B) to enforcing the "terms of the plan."

In any event, this Court need not resolve whether § 1054(h)(6) makes step 1 unnecessary in remedying a violation of § 1054(h) because no provision parallel to § 1054(h)(6) exists for § 1054(g); as a result, at least for a violation of § 1054(g), step 1 is essential.  Since remedying a violation of § 1054(g) requires changing – not simply enforcing – the terms of the plan,

7

§ 1132(a)(1)(B) provides inadequate relief, and other equitable relief may therefore be "appropriate" under § 1132(a)(3). See CIGNA, 131 S. Ct. at 1876-77; Varity, 516 U.S. at 515. That conclusion disposes of Defendants' sole challenge.

With further evidentiary development, it may become apparent that Virtue lacks the factual support to back up his allegations. But at this early stage in the proceedings, he need only allege sufficient facts that, if accepted as true, state a plausible claim to relief. See Iqbal, 556 U.S. at 678. He has met that burden here.

## IV. Conclusion

For the aforementioned reasons, the Court will deny Defendants' Motion for Partial Judgment on the Pleadings. A separate Order consistent with this Opinion will be issued this day.

*/s/ James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: August 22, 2012