**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**DANIEL A. VIRTUE,**

    **Plaintiff,**

    **v.**　　　　　　　　　　　　　　　　**Civil Action No. 12-516 (JEB)**

**INTERNATIONAL BROTHERHOOD OF**
**TEAMSTERS RETIREMENT AND**
**FAMILY PROTECTION PLAN,** *et al.*,

    **Defendants.**

## MEMORANDUM OPINION

Plaintiff Daniel Virtue worked a series of jobs with the International Brotherhood of

Teamsters from October 2000 to January 2007. As a result of his service with the IBT, his local

union, and as a rank-and-file Teamster, he was eligible to participate in at least four Teamsters-

affiliated pension plans. When Virtue also sought to participate in the IBT's Family Protection

Plan, typically only available to full-time IBT officers and employees, his request was denied.

He then brought this lawsuit under Section 502(a)(3) of the Employee Retirement Income

Security Act of 1974, 29 U.S.C. § 1132(a)(3), seeking declaratory and injunctive relief on behalf

of himself and a class of similarly situated persons. He argued that a 2001 amendment to the

Plan that barred part-time "stipend" employees from participating violated ERISA's anti-cutback

provision, 29 U.S.C. § 1054(g), by improperly terminating benefits already accrued. Virtue now

seeks, pursuant to Fed. R. Civ. P. 23, to certify as a class the group of all individuals adversely

affected by the amendment. Because Virtue's own claim is time-barred, however, he cannot

satisfy the four prerequisites to class certification required by Rule 23(a), and the Motion will be

denied.

1

## I.        Background

According to Defendants, the International Brotherhood of Teamsters has 1.4 million members, accounting for one out of every ten union members in the United States.  See Opp. at 3.  Its national headquarters in Washington, D.C., employs a variety of support staff who assist local unions.  Id. at 3-4.  The IBT also coordinates and provides benefits to rank-and-file Teamsters, local union staff, and employees who work at the union's headquarters in Washington.  Id. at 4.  The Defendant Plan here, the IBT Retirement and Family Protection Plan, "is a defined benefit pension plan that the IBT sponsors to provide pensions to its officers and employees who work at the [IBT]'s Washington, DC headquarters."  Id.  The Plan is covered under ERISA.  Id.  In 2001, the IBT amended the Plan's regulations to exclude employees classed as "stipend employees," or "part-time political designee[s]" hired after April 1, 1999.  Id. at 5-6.  According to the IBT, "Stipend employees are patronage positions.  They are part-time employees hired by the IBT's Office of the General President to work for a salary on an 'as needed basis' after that Office determines that there is a need for an individual's services in a particular area – i.e., serving on a grievance committee or serving as part of a negotiating committee."  Id. at 6; Exh. 1 (Deposition of John Ward) at 15:23, 64:15-19, 95:6-96:17; Exh. 3 (Declaration of Tyson Johnson), ¶ 7.

Virtue was a long-time Teamster member and, eventually, a local union president.  See Opp. at 7-8; Exh. 5 (Deposition of Daniel Virtue) at 6:10-8:10, 9:9-20, 13:2-12, 25:1-8, 74:19-21.  From October 2000 to January 2007, furthermore, he served in a variety of positions for the IBT.  See Second Am. Compl., ¶ 2.  Although Virtue's appointment letters said nothing about pension coverage as a result of his IBT employment, Virtue testified that he believed he could be eligible to participate in the Plan at issue in this case.  See Virtue Dep. at 115:12-19, 117:2-12.  In May 2002, the IBT attempted to disabuse him of this notion, mailing to Virtue and all other

similarly situated employees a notice informing them of their status as stipend employees and referring them to the Stipend Employee Policy, which specified that such employees were only eligible for travel-accident insurance. <u>See</u> Opp., Exh. 4 (Correspondence Regarding Roger Hunt and Robert White). The IBT reiterated this position in 2006, when the former Mrs. Virtue's divorce attorney, Christina M. Veltri, requested information regarding "all benefits" Virtue had with the IBT. <u>See</u> Virtue Dep., Exh. 8 (Correspondence with Christina Veltri). The IBT informed Veltri and Virtue that he was "considered a 'Stipend employee' and only receives the Travel Accident Insurance benefit" from the IBT. <u>Id.</u> Nonetheless, in 2009, following his termination from IBT service, Virtue wrote the IBT to apply for benefits under the Plan. <u>See</u> Mot., Exh. B (Declaration of Daniel Virtue), ¶ 22. Both Virtue's request and his subsequent administrative appeals were denied. <u>Id.</u>

In April 2012, Virtue brought this action on his own behalf and that of a class of similarly situated persons, pursuant to Sections 502(a)(1)(B) and (a)(3) of ERISA, 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3). In his Complaint, he alleges that the Plan's 2001 Amendment and the associated Stipend Employee Policy had the effect of impermissibly cutting back benefits owed to Stipend Employees under the Plan in violation of 29 U.S.C. § 1054(g). <u>See</u> Second Am. Compl., ¶¶ 16-32. On behalf of himself and the putative class, he seeks reformation of the Plan (Counts I and II), and for himself alone, he requests an order requiring the Plan to provide him with benefits going forward (Count III), and a distribution of past benefits allegedly due to him (Count IV). <u>Id.</u> The Court now considers Virtue's Motion to certify a class "consist[ing] of those individuals eligible to participate in the Plan on November 16, 2001, who have been excluded from participation on the basis of being a 'Stipend' employee." <u>See</u> Mot. at 1 n.1.

**II.        Legal Standard**

To certify a class under Rule 23, Plaintiff must show that the proposed class satisfies all four requirements of Rule 23(a) and one of the three Rule 23(b) requirements.  See Fed. R. Civ. P. 23(a)-(b); see also Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2548, 2551 (2011).  Rule 23(a) states that a class may only be certified if (1) the class is so numerous that joinder of all members is impracticable ("numerosity"), (2) there are questions of law or fact common to the class ("commonality"), (3) the claims or defenses of the representative are typical of those of the class ("typicality"), and (4) the class representative will fairly and adequately protect the interests of the class ("adequacy of representation").   He must show, in addition, that (1) the prosecution of separate actions by or against individual members of the class would create a risk of inconsistent adjudications, (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole, or (3) questions of law or fact common to the members of the class predominate over any questions affecting only individual members.  See Fed. R. Civ. P. 23(b)(1)-(3).

In deciding whether to certify a class under Rule 23, a district court must undertake a "rigorous analysis" of whether the requirements of the Rule have been satisfied.  General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 161 (1982).  "Rule 23 does not set forth a mere pleading standard." Wal-Mart, 131 S. Ct. at 2551.  Rather, the party seeking class certification bears the burden of "affirmatively demonstrat[ing] his compliance with the Rule – that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc."  Id. (emphasis in original).  The Court's analysis of whether a class may be certified "[f]requently . . . entail[s] some overlap with the merits of the plaintiff's underlying claim," requiring the Court to "probe behind the pleadings before coming to rest on

4

the certification question." Id. (citation omitted); see also Falcon, 457 U.S. at 160 ("'[T]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'") (internal quotation marks omitted).  Because a decision on class certification "'requires a thorough examination of the factual and legal allegations,' the court's rigorous analysis may include a 'preliminary inquiry into the merits,' and the court may 'consider the substantive elements of the plaintiffs' case in order to envision the form that a trial on those issues would take.'"  In re Hydrogen Peroxide Antitrust Litigation, 552 F.3d 305, 317-18 (3d Cir. 2008) (internal citations omitted).

### III.        Analysis

Before a Court may consider the options under Rule 23(b), Rule 23(a) requires that a putative class meet all four prerequisites for certification – numerosity, commonality, typicality, and adequacy of representation.  See Fed. R. Civ. P. 23(a); see also Wal-Mart, 131 S. Ct. at 2548, 2551.  Defendants do not contest that the class meets the commonality requirement, but argue instead that it suffers from fatal defects regarding the other three.  See Opp. at 15.  Their principal contention concerns the fourth prerequisite: they maintain that Virtue's own claim is time-barred, rendering him an inadequate class representative.  See id. at 15-16.  They are correct.  Because no other plaintiff is named as a potential class representative, moreover, the class cannot be adequately represented and thus cannot be certified.  The Court will further explain that all potential class members here likely run afoul of the statute of limitations, meaning that refiling the Complaint with a different plaintiff named as class representative would probably yield the same result.

A.  Statute of Limitations

Virtue alleges a violation of ERISA's anti-cutback rule, 29 U.S.C. § 1054(g), which bars

ERISA-covered benefit plans from enacting most amendments that would decrease participants'

accrued benefits, and brings his claim under its civil-enforcement provision, 29 U.S.C. §

1132(a)(3), which permits civil actions by plan participants "to enjoin any act or practice which

violates any provision of [ERISA] or the terms of the plan."  See Second Am. Compl., ¶¶ 16-21.

He argues that the Plan's "stipend employee" policy, embodied in Amendment 2001-C, "had the

necessary consequence of terminating the accrued benefits of persons already in the Plan" as of

the date of the amendment.  See id., ¶¶ 17-19.  It was, moreover, promulgated without

appropriate notice to the affected employees and was thus "a prohibited amendment under . . .

the anti-cutback rule."  See id.  Under ERISA, which provides no express statute of limitations

for "non-fiduciary-duty" claims such as this one, the "court must . . . borrow the most closely

analogous statute of limitations from the state in which [it] sits."  Connors v. Hallmark & Son

Coal Co., 935 F.2d 336, 341 (D.C. Cir. 1991).

Under these circumstances, courts in this district have applied the District of Columbia's

statute of limitations for breach-of-contract actions, see D.C. Code § 12-301(7), which runs for

three years from the time when "the plaintiff discovers, or with due diligence should have

discovered the injury that is the basis of the action."  Kifafi v. Hilton Hotels Retirement Plan,

616 F. Supp. 2d 7, 35-36 (D.D.C. 2009) (citing Connors, 935 F.2d at 341) (internal quotation

marks omitted); see also, e.g., Pettaway v. Teachers Ins. and Annuity Ass'n of America, 547 F.

Supp. 2d 1, 4 (D.D.C. 2008) ("In pension benefit situations such as this one, courts in this Circuit

analogize an alleged denial of benefits to a breach of contract claim, which has a statute of

limitations of three years under District of Columbia law.").  "In the ERISA context, the

discovery rule has been 'developed' into the more specific 'clear repudiation' rule whereby a

non-fiduciary cause of action accrues when a claim for benefits has been denied.  Notably, a

formal denial is not required if there has already been a repudiation of the benefits by the

fiduciary which was clear and made known [to] the beneficiary."  Miller v. Fortis Benefits Ins.

Co., 475 F.3d 516, 520-21 (3d Cir. 2007) (internal citation omitted) (emphasis in original); see

also Connors, 935 F.2d at 342 (holding that ERISA claim accrues "at the time of injury" "where

the defendant communicates his repudiation of the contract"); Kifafi, 616 F. Supp. 2d at 36 ("In

most instances, therefore, a plaintiff's ERISA claim will not begin to accrue until there has been

a repudiation by the fiduciary which is clear and made known to the beneficiaries.") (internal

citation and quotation marks omitted).

　　　　Defendants argue that Virtue's claim is time-barred because they "clearly repudiated" his

right to benefits under the Plan on two separate occasions.  See Opp. at 21, 26.  First, they

contend that Virtue received notice of his ineligibility in May 2002, when the IBT sent a letter to

"stipend employees" informing them of their status and of the IBT's policy that such employees

were not entitled to any benefits other than travel-accident insurance.  See id. at 20-21;

Hunt/White Correspondence.  Second, Defendants assert that the IBT again informed Virtue in

2006 – in connection with his divorce proceedings – that he was not eligible to participate in the

Plan.  See Opp. at 26.  The Court agrees: at the very least, this second notice triggered the statute

of limitations, which began to run in April 2006 and expired no later than April 2009.  Likewise,

the Court finds that the Plan is likely correct that the claims of all the putative class members

here are time-barred because the notice mailed to all "stipend employees" in 2002 informing

them of their ineligibility for plan benefits qualifies as a "clear repudiation" of their entitlement

to benefits.

   B.  Notice to Virtue

   Under the ERISA "clear repudiation" doctrine, "some 'event other than a denial of a

claim' may trigger the statute of limitations by clearly alerting the plaintiff that his entitlement to

benefits has been repudiated."  Miller, 475 F.3d at 521 (quoting Cotter v. E. Conference of

Teamsters Ret. Plan, 898 F.2d 424, 429 (4th Cir. 1990)).  Here, the notice Virtue received in

2006 certainly qualified as a clear repudiation of his right to benefits under the Plan.  During a

contested divorce proceeding, Virtue authorized the IBT to release "any and all information

pertaining to 'employment' and 'retirement benefits'" to his wife's divorce attorney, Christina

M. Veltri.  See Opp. at 26 (citing Virtue Dep. at 96:3-12).  Veltri then submitted Virtue's release

to the IBT on April 10, 2006, along with a cover letter requesting information regarding Virtue's

pension benefits.  See id. The IBT replied to Veltri and Virtue on April 14, 2006, indicating that

Virtue "is considered a 'Stipend Employee' and only receives the Travel Accident Insurance

benefit from the [IBT]," and enclosing a copy of the Stipend Employee Policy.  See Veltri

Correspondence; Virtue Dep., Exh. 2 (Interrogatory Responses on Behalf of Daniel Virtue) at 13.

At his deposition, Virtue confirmed that he received the letter and that he understood that the

correspondence stated he was not eligible to participate in the Plan.  See Virtue Dep. at 93:19-

94:6, 96:16-97:12.

   Given his deposition testimony, Virtue wisely does not appear to contest that he in fact

received and understood this notice, nor does his Reply brief indicate that he believes this notice

was not a clear repudiation of his right to benefits under the Plan.  While his Reply takes issue

with the adequacy of the notice mailed to all "stipend employees" in 2002, Virtue presents no

argument or evidence to suggest that this individual letter was not "clear" or that it did not

"ma[k]e known [to him as] the beneficiary" that he was ineligible for participation in the Plan.

Indeed, such an argument would face an uphill battle.  The Plan's April 14, 2006, letter is precisely the kind of notice other circuits have recognized as satisfying the clear-repudiation rule and triggering the statute of limitations.  For example, in Daill v. Sheet Metal Workers' Local 73 Pension Fund, 100 F.3d 62 (7th Cir. 1996), the court held that the defendant fund's reply to plaintiff's letter inquiring about his pension eligibility qualified as a clear repudiation where "the fund carefully and comprehensively explained the basis for its decision" that plaintiff was not entitled to a pension.  Id. at 66-67.  Here, the IBT's letter to Virtue and Veltri similarly explained that it believed Virtue to be a stipend employee, that its policy dictated that stipend employees were not eligible to participate in the Plan, and that because Virtue was a stipend employee, he was ineligible for benefits.  Although the D.C. Circuit has yet to define the boundaries of what events may constitute a "clear repudiation," the Court's ruling here is consistent with other federal case authority.  See, e.g., Carey v. Int'l Bhd. of Elec. Workers Local 363 Pension Plan, 201 F.3d 44, 48-49 (2d Cir. 1999) (holding denial of informal request for benefits to be clear repudiation); Union Pac. R.R. Co. v. Beckham, 138 F.3d 325, 331 (8th Cir. 1998) (holding "fact sheets" explaining plan changes constituted clear repudiation).

In light of this clear notice, the Court must find that Virtue was or should have been aware of the Plan's repudiation of his right to benefits no later than April 2006.  As a result, the statute of limitations began to run that month and expired no later than April 2009, nearly three years before Virtue filed this lawsuit.  His claim is thus time-barred.

Because Virtue's own claim here is clearly precluded by the statute of limitations, he cannot serve as an adequate representative of the class.  "Inherent in Rule 23 is the requirement that the class representatives be members of the class."  Great Rivers Co-op. of Southeastern Iowa v. Farmland Industries, Inc., 120 F.3d 893, 899 (8th Cir. 1997).  "Regardless of whether the

9

issue is framed in terms of the typicality of the representative's claims . . . or the adequacy of its

representation . . . generally a plaintiff whose claim is time-barred may not represent the class."

Macomber v. Travelers Property and Cas. Corp., 894 A.2d 240, 251-52 (Conn. 2006) (first

ellipsis in original); see also, e.g., Piazza v. Ebsco Industries, Inc., 273 F.3d 1341, 1349 (11th

Cir. 2001) ("Since Piazza's claim against PwC is time-barred, we hold that the district court

abused its discretion in finding Piazza to be an adequate class representative.  Accordingly, we

reverse the certification of the class. . .".) (citation omitted); Robinson v. Sheriff of Cook

County, 167 F.3d 1155, 1158 (7th Cir. 1999) ("The point is not that a plaintiff is disqualified as

class representative if he may fail to prove his case or if the defendant may have good defenses. .

. .  But if his claim is a clear loser at the time he asks to be made class representative, then

approving him as a class representative can only hurt the class.") (emphasis omitted); Great

Rivers, 120 F.3d at 899 ("Here, Tacey is not and cannot be a class member because his claim is

time barred; consequently, he cannot represent the class."); Weinberger v. Retail Credit Co., 498

F.2d 552, 556 (4th Cir. 1974) ("Furthermore, being barred from suit himself [by the statute of

limitations], Weinberger is not a member of the class he seeks to represent under section 16 and

thus does not fulfill the first prerequisite of Fed. R. Civ. P. 23(a).").  Because Virtue cannot be

considered an adequate representative – and no other representative is named in the Complaint –

the putative class cannot meet all four requirements of Rule 23(a) to be certified.

C.  Notice to the Class

In the event another putative class member were to consider being substituted here as a

plaintiff – or filing his own suit – the Court believes it worthwhile to discuss a likely additional

impediment.  Setting Virtue's divorce proceeding aside, the statute of limitations still appears to

bar any claim.  In May 2002, the IBT sent all stipend employees (that is, all members of the

putative class) "a letter informing them that they fell into the category of stipend employee and attached the IBT's Stipend Employee Policy . . . [, which] explicitly states that a stipend employee is not entitled to any benefits other than travel accident insurance." <u>See</u> Opp. at 20-21; Hunt/White Correspondence.  The Plan argues that this notice constituted a clear repudiation of any entitlement to Plan benefits for all stipend employees. <u>See</u> Opp. at 21.  Such a position seems persuasive, and it would mean that the statute of limitations in fact expired in May 2005, some seven years before Virtue filed this lawsuit.

Virtue takes issue with this theory, arguing first that the notice was ineffective because it was mailed by the IBT, not the Plan itself, and second that the notice was unclear because "the cover letter [did] not state that the recipient is ineligible for benefits under the Plan." <u>See</u> Rep. at 12-13.  Virtue's first contention is contrary to the teachings of the Supreme Court and several federal circuit courts, which suggest that notice from an employer can be adequate in these circumstances because the decision regarding which employees to include in an ERISA-covered benefit plan rests with the employer, not the plan itself. <u>See, e.g.</u>, <u>Tinley v. Gannett Co., Inc.</u>, 55 Fed. App'x 74, 78 (3d Cir. 2003) (noting that employers "in their settlor capacity have the power to decide which employees to include in their plans in the first place," and holding that notice received from employer, rather than ERISA-covered plan itself, qualified as clear repudiation); <u>see also</u> <u>Hughes Aircraft Co. v. Jacobson</u>, 525 U.S. 432, 444 (1999) (approving settlor-employer's ability to make decisions "regarding the form or structure of the Plan such as who is entitled to receive benefits and in what amounts"); <u>Capital Cities/ABC, Inc. v. Ratcliff</u>, 141 F.3d 1405, 1409 (10th Cir. 1998) (same).

Virtue's contention that the notice was itself unclear is also weak.  He points to no authority – and, indeed, the Court has found none – prescribing the precise form of notice

required to constitute a clear repudiation or requiring that such notice include an explicit covering statement indicating that the recipient of the notice is ineligible for benefits.  The notice here plainly states that the recipients are considered stipend employees, and the attached "Stipend Employee Policy" explains, with similar clarity, that those stipend employees were not eligible for benefits beyond travel-accident insurance.  Any reasonable reader of this notice would conclude that he – as a stipend employee – was ineligible for pension benefits under the Plan.  Indeed, correspondence from two other members of the putative class confirms that the notice had precisely this effect: both Roger D. Hunt and Bob White indicated to the IBT that they understood the letter to inform them that they were ineligible for benefits under the Plan.  See Hunt/White Correspondence.

The class Virtue seeks to certify – "those individuals eligible to participate in the Plan on November 16, 2001, who have been excluded from participation on the basis of being a 'Stipend' employee," see Mot. at 1 n.1 – all received this notice, which clearly repudiated their right to benefits under the Plan.  As a result, the statute of limitations for all members of the putative class apparently began to run in May 2002 and expired in May 2005.  Because it appears, then, that the claims of all members of the putative class are time-barred, it is likely that a new named plaintiff would be unable to achieve any more success than Virtue himself, unless the May 2002 notice was not, in fact, mailed to all Stipend Employees.  Of course, anyone who became a stipend employee after the notice was sent in May 2002 would be barred by the terms of the amendment itself.

**IV.      Conclusion**

For the foregoing reasons, the Court believes that class certification is not appropriate in this matter.  An Order denying Plaintiff's Motion and setting a status hearing will issue this day.


/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge


Date:  April 25, 2013