UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DANIEL A. VIRTUE,<br><br>    Plaintiff,<br><br>    v.<br><br>INTERNATIONAL BROTHERHOOD OF TEAMSTERS RETIREMENT AND FAMILY PROTECTION PLAN, *et al.*,<br><br>    Defendants. | Civil Action No. 12-516 (JEB) |

## MEMORANDUM OPINION

Plaintiff Daniel Virtue is something of a collector. Over the course of his employment with the International Brotherhood of Teamsters, with his local union, and as a rank-and-file Teamster, he has collected memberships in at least four Teamsters-affiliated pension plans. In this lawsuit, he seeks to acquire membership in (and benefits from) a fifth IBT pension fund. Unfortunately for Virtue, his quest to assemble a complete portfolio of IBT pension plans ends here.

Virtue contends that IBT and its Retirement and Family Protection Plan violated his rights under the Employee Retirement Income Security Act of 1974, a statute that protects pension benefits, when they amended the Plan in 2001 to retroactively curtail participation by part-time "stipend employees" like himself. See 29 U.S.C. §§ 1054(g)-(h), 1132(a)(1)(B), 1132(a)(3). He argues that this amendment improperly eliminated – or "cut back" – his rights and benefits without adequate notice.

The problem for Virtue, highlighted in Defendants' Motion for Summary Judgment, is that the relevant statute of limitations extends for only three years after an employee discovers

1

that he is not entitled to benefits under the Plan. Because IBT and the Plan unequivocally informed Virtue that he was not eligible to participate in the Plan well over three years before he filed this suit, his claims are time-barred. The Court therefore grants the Defendants summary judgment and dismisses Virtue's case.

I.   Background

The facts in this case are largely undisputed; where there is a lack of agreement, the Court considers the evidence in the light most favorable to Virtue. The International Brotherhood of Teamsters is one of the largest labor unions in the world, with around 1.4 million members. See Teamsters Structure, IBT, http://www.teamster.org/content/teamsters-structure (last visited Oct. 31, 2013). IBT's mission is to promote strong local Teamsters unions, and its national headquarters in Washington, D.C., employs a variety of support staff who assist the locals. Id. The IBT also coordinates benefits for rank-and-file Teamsters, as well as for local union staff and employees who work at the Washington headquarters. Id.

The Defendant Plan here, formally called the IBT Retirement and Family Protection Plan, is a defined-benefit pension plan that the IBT sponsors to provide pensions to its officers and employees who work at the IBT's Washington, D.C., headquarters. See Mot., Exh. 1 (IBT Retirement and Family Protection Plan) at 34. The Plan, which is covered under ERISA, is not designed to offer benefits to members or officers of local unions. Id. In 2001, the IBT amended the Plan's regulations to exclude "stipend employees" who were hired after April 1, 1999, from participation. See Mot., Exh. 1 (Virtue Appeal Determination) at 22. According to the IBT, stipend employees are patronage positions. IBT describes them as part-time employees hired to work for a salary on an "as needed basis" after the Office of the General President determines

2

that an individual's services are needed in a particular area – *e.g.*, serving on a grievance committee or serving as part of a negotiating committee. See Mot., Exh. 2 (Deposition of John D. Ward) at 64:15-23, 95:6-96:17; Exh. 3 (Declaration of Tyson Johnson), ¶ 7. Prior to this amendment, IBT employees were eligible for benefits if they worked 1,000 hours or more over a twelve-month period. See IBT Retirement and Family Protection Plan at 39.

Virtue spent the majority of his career as a local Teamster member and, later, as a local union president. See Opp., Exh. B (Deposition of Daniel A. Virtue) at 6:10-8:10, 9:9-20, 13:2-12. From October 2000 to January 2007, in addition to his local union duties, he served in a variety of positions as a stipend employee for the IBT. See Opp., Exh. A (Declaration of Daniel Virtue), ¶¶ 5, 7. Although Virtue's IBT appointment letters said nothing about pension coverage, Virtue testified that he believed he could be eligible to participate in the Plan. See Virtue Dep. at 115:12-19, 117:2-12. Virtue maintains that he worked over 1,000 hours in his first twelve months of employment, which would have made him a covered employee prior to Amendment 2001-C. See id. at 56:7-18, 59:16-20, 62:9-18, 64:3-9. In May 2002, the IBT attempted to disabuse Virtue and others of the notion that they were eligible for coverage under the Plan. It mailed a notice to Virtue and all other similarly situated employees informing them of their status as stipend employees and referring them to the Stipend Employee Policy. See Mot., Exh. 4 (Correspondence Regarding Roger Hunt and Robert White). That policy specified that such employees were only eligible for travel-accident insurance, not for other IBT benefits. See id.

The IBT reiterated that position in 2006, when the former Mrs. Virtue's divorce attorney, Christina M. Veltri, requested information regarding "all benefits" Virtue had with the IBT. See Mot., Exh. 6 (Correspondence with Christina Veltri) at 35-37. The IBT informed Veltri and

3

Virtue that he was "considered a 'Stipend Employee' and only receives the Travel Accident Insurance benefit" from the IBT. Id. at 37. At the time – when his former wife might have had some claim to the benefits – Virtue did not object to the IBT's conclusion. In 2009, however, following his termination from IBT service, Virtue wrote the IBT to apply for benefits under the Plan. See Virtue Decl., ¶ 22. Both Virtue's request and his subsequent administrative appeals were denied. Id.

In April 2012, Virtue brought this action on his own behalf and on behalf of a class of similarly situated persons, pursuant to Sections 502(a)(1)(B) and (a)(3) of ERISA, 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3). In his Complaint, he alleged that the Plan's 2001 Amendment and the associated Stipend Employee Policy had the effect of impermissibly cutting back benefits owed to stipend employees under the Plan in violation of 29 U.S.C. § 1054(g), and without the notice required by 29 U.S.C. § 1054(h). See Second Am. Compl., ¶¶ 16-32. On behalf of himself and the putative class, he sought reformation of the Plan (Counts I and II), and for himself alone, he requested an order requiring the Plan to provide him with benefits going forward (Count III) and a distribution of past benefits allegedly due to him (Count IV). Id. In April of 2013, the Court denied class certification, reasoning that Virtue was not an adequate class representative because his own claim was time-barred. See Virtue v. Int'l. Bhd. of Teamsters Retirement & Family Protection Plan (Virtue I), 292 F.R.D. 8 (D.D.C. 2013). Following up on this favorable ruling, Defendants now move for summary judgment on the same basis.

## II. Legal Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

4

56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). A fact is "material" if it is capable of affecting the substantive outcome of the litigation. See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Scott v. Harris, 550 U.S. 372, 380 (2007); Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

When a motion for summary judgment is under consideration, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Liberty Lobby, 477 U.S. at 255.

**III.    Analysis**

Virtue alleges a violation of ERISA's anti-cutback rule, 29 U.S.C. § 1054(g), which bars pension plans from adopting amendments that would decrease participants' accrued benefits. Specifically, he contends that the Plan's "stipend employee" policy, outlined in Amendment 2001-C, "had the necessary consequence of terminating the accrued benefits of persons already in the Plan." See Second Am. Compl., ¶¶ 17-19. He also complains that he was not given notice of Amendment 2001-C as required by ERISA. See 29 U.S.C. § 1054(h). Virtue brings those claims under two prongs of ERISA's civil-enforcement provision: 29 U.S.C. § 1132(a)(3), which permits actions "to enjoin any act or practice which violates any provision of [ERISA] or the terms of the plan," and 29 U.S.C. § 1132(a)(1)(B), which allows participants "to recover

5

benefits due." See Second Am. Compl., ¶¶ 16-32. He claims that he qualified for enrollment in the Plan by performing 1,000 or more hours of work over twelve months before the stipend policy was adopted. Virtue therefore asks the Court to reform the Plan and order it to pay him the benefits owed, to the tune of nearly half a million dollars.

As a threshold matter, Defendants maintain that Virtue lacks standing to bring this suit because he does not have a "colorable claim" that he "will prevail" and obtain benefits, and thus he is not a Plan "participant" entitled to sue under ERISA. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 117-118 (1989) (noting that ERISA's standing provision "allows suits for benefits" only "'by a participant or beneficiary'"). Defendants then proceed, in essence, to argue that they will win on the merits of the case. Virtue, however, presents a colorable claim, supported by multiple affidavits, that he worked 1,000 hours in his first year and hence had vested rights in the Plan before Amendment 2001-C excluded him as a stipend employee. See Virtue Dep. at 56:7-18, 59:16-20, 62:9-18, 64:3-9; Opp., Exh. C (Declaration of Philip Young), ¶¶ 6-8; Exh. D (Declaration of Tom Griffith), ¶¶ 6-8; Exh. E (Declaration of Carlos N. Ramos II), ¶¶ 4-5, 8-9; see, e.g., Panaras v. Liquid Carbonic Indus. Corp., 74 F.3d 786, 790 (7th Cir. 1996) ("The requirement of a colorable claim is not a stringent one. This circuit has noted that jurisdiction depends on an arguable claim, not on success and that only if any claim must be frivolous is jurisdiction lacking.") (internal quotation marks and alterations omitted). Without further delving into the hours calculation, the Court is satisfied that Virtue has standing to file this suit.

    A. <u>Statute of Limitations</u>

Defendants also argue that the Court need not address the merits of the case because Virtue's claim is barred by the relevant statute of limitations. As the Court has already ruled on

this issue, the law-of-the-case doctrine likely supports Defendants' position here. See 18B Charles Alan Wright et al., Federal Practice & Procedure § 4478.1 (2d ed. 1986) (Trial courts are not required to "yield to every request to reconsider" prior rulings.); see also Pit River Home & Agricultural Coop. Ass'n v. United States, 30 F.3d 1088, 1097 (9th Cir. 1994) ("The law of the case doctrine is a discretionary one created to maintain consistency and avoid reconsideration, during the course of a single continuing lawsuit, of those decisions that are intended to put a matter to rest."). Even if the law of the case did not apply, however, the Court now explains why it would reach the same conclusion.

Under ERISA, which provides no express statute of limitations for "non-fiduciary-duty" claims such as this one, the "court must . . . borrow the most closely analogous statute of limitations from the state in which [it] sits." Connors v. Hallmark & Son Coal Co., 935 F.2d 336, 341 (D.C. Cir. 1991). Other courts have analogized claims for unpaid benefits under ERISA to breach-of-contract claims. See, e.g., Ruppert v. Alliant Energy Cash Balance Pension Plan, 726 F.3d 936, 941 (7th Cir. 2013) (applying state-contract-law statute of limitations to ERISA § 1132 case); Pilger v. Sweeney, 725 F.3d 922, 925-26 (8th Cir. 2013) (same); Santaliz-Rios v. Metropolitan Life Ins. Co., 693 F.3d 57, 59-60 (1st Cir. 2012) (same). Consistent with this thinking, courts in this district have applied the District of Columbia's three-year statute of limitations for breach-of-contract actions to ERISA benefits suits. See D.C. Code § 12-301(7); Pettaway v. Teachers Ins. & Annuity Ass'n of America, 547 F. Supp. 2d 1, 4 (D.D.C. 2008) ("In pension benefit situations such as this one, courts in this Circuit analogize an alleged denial of benefits to a breach of contract claim, which has a statute of limitations of three years under District of Columbia law."). As the Court agrees this is the proper course – and as Plaintiff does not argue to the contrary – the three-year period will govern.

7

Actions under ERISA, furthermore, follow the discovery rule: that is, the statute of limitations begins to run when "the plaintiff discovers, or with due diligence should have discovered, the injury that is the basis of the action." Connors, 935 F.2d at 341 (internal quotation marks omitted). "In the ERISA context, the discovery rule has been 'developed' into the more specific 'clear repudiation' rule whereby a non-fiduciary cause of action accrues when a claim for benefits has been denied." Miller v. Fortis Benefits Ins. Co., 475 F.3d 516, 520-21 (3d Cir. 2007) (internal citation omitted). A formal denial is not required, as long as the denial is "clear and made known to the plan beneficiary." Kifafi v. Hilton Hotels Retirement Plan, 701 F.3d 718, 729 (D.C. Cir. 2012); see also Connors, 935 F.2d at 342 (holding that ERISA claim accrues "at the time of injury" "where the defendant communicates his repudiation of the contract").

Defendants argue that Virtue's claim is time-barred because they "clearly repudiated" his right to benefits under the Plan on two separate occasions. See Mot. at 14-16. First, they contend that Virtue's claim to benefits was preemptively repudiated in May 2002, when the IBT sent a letter to "stipend employees" informing them of the IBT's policy that they were not entitled to any benefits other than travel-accident insurance. See id. Second, Defendants note that the IBT again informed Virtue in 2006 – in connection with his divorce proceedings – that he was not eligible to participate in the Plan. See id. None of those facts is disputed. See Liberty Lobby, 477 U.S. at 248. As the Court held in its prior denial of class certification, Defendants are correct: Virtue's claims are indeed time-barred. See Virtue I, 292 F.R.D. at 13. At the very least, the notice Virtue received in April 2006 qualified as a clear repudiation, which would mean that the statute of limitations expired no later than April 2009.

8

During his divorce proceedings, Virtue authorized the IBT to release any and all information pertaining to his employment and retirement benefits to his wife's divorce attorney, Christina M. Veltri. See Virtue Dep. at 96:3-15. Veltri then requested information regarding Virtue's IBT pension benefits. See id. The IBT replied to Veltri and Virtue on April 14, 2006, indicating that Virtue "is considered a 'Stipend Employee' and only receives the Travel Accident Insurance benefit from the [IBT]," and enclosing a copy of the Stipend Employee Policy. See Correspondence with Christina Veltri; Mot., Exh. 6 (Interrogatory Responses on Behalf of Daniel Virtue) at 25. At his deposition, Virtue confirmed that he had received the letter and that he had understood that the correspondence stated he was not eligible to participate in the Plan. See Virtue Dep. at 93:19-94:6, 96:16-97:12.

The 2006 correspondence is crystal clear, and it certainly made the repudiation of any claim to benefits "known to the plan beneficiary." Kifafi, 701 F.3d at 729; see Connors, 935 F.2d at 342. As was true throughout the class-certification dispute, Virtue does not contest that he in fact received and understood the notice or that the notice repudiated his claim to benefits. Indeed, the Plan's April 14, 2006, letter is precisely the kind of notice other circuits have recognized as constituting a clear repudiation and triggering the statute of limitations. For example, in Daill v. Sheet Metal Workers' Local 73 Pension Fund, 100 F.3d 62 (7th Cir. 1996), the court held that a Plan's letter responding to an employee's inquiry qualified as a clear repudiation where "the fund carefully and comprehensively explained" why that employee was not entitled to a pension. Id. at 66-67; see also, e.g., Carey v. Int'l Bhd. of Elec. Workers Local 363 Pension Plan, 201 F.3d 44, 48-49 (2d Cir. 1999) (denial of informal request for benefits is a clear repudiation); Union Pac. R.R. Co. v. Beckham, 138 F.3d 325, 331 (8th Cir. 1998) ("fact sheets" explaining plan changes constituted clear repudiation). In this case, IBT's 2006 letter

9

similarly explained that Virtue was a stipend employee, that stipend employees were not eligible to participate in the Plan, and that he was therefore ineligible for benefits.

B. Virtue's Objections

Virtue raises two main objections to this line of reasoning, which the Court did not consider in Virtue I. First, he maintains that the Plan waived its statute-of-limitations defense by reconsidering – at his insistence – his eligibility for benefits in 2009. In so contending, Virtue relies on arguments that sound in both waiver and equitable tolling. Second, Virtue asserts that the Plan's repudiation of benefits was not clear and consistent, both because it did not give him notice of the fact that Amendment 2001-C potentially cut back his vested rights and because the Plan later let Virtue appeal its determination. As the Court separately explains, each objection misses the mark.

1. *Waiver and Equitable Tolling*

The Court starts with Virtue's waiver and equitable-tolling arguments. A statute-of-limitations defense is not jurisdictional – that is, it does not affect the Court's ability to hear the case – and it can therefore be waived or tolled. Cf. Bowden v. United States, 106 F.3d 433, 437 (D.C. Cir. 1997). Virtue argues that Defendants waived this defense by considering his petition for benefits in 2009 and allowing an administrative appeal thereafter. See Opp. at 9-12. This, however, does not suffice to constitute waiver.

To begin with, courts in this circuit have been "loath to hold that mere investigation" of a plaintiff's complaint or claim "without more constitutes a binding waiver of any agency's right to raise the timeliness issue." Brown v. Marsh, 777 F.2d 8, 15 (D.C. Cir. 1985); see also Boyd v. United States Postal Serv., 752 F.2d 410, 414 (9th Cir.1985); Oaxaca v. Roscoe, 641 F.2d 386, 390 (5th Cir. 1981). And for good reason. In this case, for example, Virtue sought leave from

10

the Plan to apply for benefits in the summer of 2009, about two years after his termination from employment with the IBT and three years after the 2006 correspondence made clear that he was not eligible. See Virtue Decl., ¶ 22. The Plan denied Virtue leave to apply promptly in July of 2009, for the same reasons listed in the 2006 letter. Id. In November of 2010 – over a year later – Virtue contested the denial, and the Administrative Committee offered the same response and the same rationale. See Mot., Exh. 1 (Correspondence with Administrative Committee) at 13-17. Virtue then filed an administrative appeal, to which the Plan again responded. See Virtue Decl., ¶ 22. To say that IBT and the Plan waived their statute-of-limitations defense merely because they responded to Virtue's repeated appeals would be a bridge too far.

Perhaps because his waiver argument relies primarily on cases that do not address waiver, Defendants also read Virtue's position as a plea for equitable tolling. Even if the Court were to equitably toll the statute for the duration of the administrative appeal – which would be the only conceivable basis for equitable tolling – it would not help Virtue. See, e.g., Gonzalez v. Hasty, 651 F.3d 318 (2d Cir. 2011) (tolling statute of limitations during administrative process); Johnson v. Rivera, 272 F.3d 519 (7th Cir. 2001) (same). He did not, after all, even initiate the administrative process until around July of 2009, and the statute of limitations had already expired as of April 2009. In these circumstances, Virtue cannot maintain "that he has been pursuing his rights diligently" via administrative appeal and "that some extraordinary circumstance stood in his way" – which are the general prerequisites for equitable tolling. Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005).

### 2. *Clear Repudiation*

Virtue's second line of argument – that his claim to benefits was not clearly and consistently repudiated – is also unpersuasive. Insofar as he contends that Defendants should

11

have alerted him to the existence of Amendment 2001-C when they repudiated his claim to benefits in 2006, Virtue's argument holds no water. Clear repudiation and the so-called "discovery rule" do not require that a plaintiff be put on notice of the particular legal claim he might have. Rather, the statute of limitations begins to run when the plaintiff discovers the harm – here, that he would not be receiving the appropriate benefits. See Miller, 475 F.3d at 520-21; Connors, 935 F.2d at 341. It is then up to the plaintiff to ferret out the legal basis for his claim – whether that is a violation of ERISA's anti-cutback rule, a miscalculation of benefits, or some other legal wrong.

To the extent Virtue argues that the repudiation was not "clear" because it was not continuous or consistent, he is also mistaken. Even assuming that the pre-ERISA requirement of continuous as well as clear repudiation applies here, the fact that the Plan responded to Virtue's 2009 and 2010 requests for benefits does not make its initial repudiation during the divorce proceedings any less clear or consistent. See Kosty v. Lewis, 319 F.2d 744 (D.C. Cir. 1963) (pre-ERISA case requiring that repudiation be continuous). True, some courts have held that benefits are not clearly repudiated until various layers of administrative review are complete. See, e.g., White v. Sun Life Assurance Co. of Canada, 488 F.3d 240, 247-48 (4th Cir. 2007). This is not a case, though, where the claim for benefits was under continuous administrative review. On the contrary, Virtue's claim was repudiated in 2006, and he did not invoke the administrative-review process for more than three years. (Notably, Virtue was less eager to contest his loss of benefits during his divorce proceedings, perhaps because doing so would have risked the assignment of half of his benefits to his then-wife.) Only three years later did he request leave to apply for benefits – and he was immediately rejected. The rejection was then confirmed and explained multiple times. The filing of this later request for benefits does not

12

alter the clarity of the initial denial, especially where the Plan's position never wavered or changed.

In light of the 2006 letter, then, the Court must find that Virtue was or should have been aware of the Plan's repudiation of his right to benefits no later than April 2006. As a result, the statute of limitations began to run that month and expired no later than April 2009, nearly three years before Virtue filed this lawsuit. The Court therefore need not determine whether IBT's 2002 letter to stipend employees also triggered the statute of limitations – although, as the Court noted in its Opinion denying class certification, if Virtue in fact received the letter, then it likely also constituted clear repudiation. See Virtue I, 292 F.R.D. at 14. In any event, based on the undisputed facts before the Court, Virtue's claim is time-barred.

## IV. Conclusion

For the foregoing reasons, the Court finds that this suit is barred by the three-year statute of limitations. An Order granting Defendant's Motion for Summary Judgment will issue this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date: November 4, 2013